IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ROBERT L. SANDERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 04-753-BH-B |
| | ) | |
| CITY OF SELMA and MAYOR JAMES PERKINS, JR., | ) ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

This matter is before the Court on Defendants' Motion (Doc. 15) for Summary Judgment. Plaintiff filed a Response (Doc. 17) and Defendants, in turn, Replied (Doc. 18). Upon review of the pleadings and all evidence submitted therewith, the Court finds that Defendants' Motion (Doc. 15) for Summary Judgment is **due to be GRANTED**.

**FACTS[1]**

1. On February 12, 2001, the City Council for the City of Selma (hereinafter, "City Council") created the position of Finance Director for the City of Selma (hereinafter, "Finance Director").

2. The City of Selma has only three (3) municipal positions which are four (4) year appointments, running concurrently with the elected officials' term in office. These positions are City Clerk, City Treasurer and City Attorney. The length of the term in office for all three of these positions is governed by state law.

3. Under Alabama statute, the City Council "shall fix by ordinance the terms of service, not to

---

[1] Unless otherwise noted, these facts are extracted from the parties' Joint Pretrial Order (Doc. 25).

exceed the term of the mayor, or all the officers appointed or elected whose terms are not prescribed by law." *Ala. Code* §11-43-46.

4. The City Council approved a motion by unanimous vote to appoint Plaintiff as Finance Director on a month-to-month basis.

5. Plaintiff began his term as Finance Director on March 26, 2001.

6. On or about June 4, 2001, Plaintiff claims he attended a meeting with Mayor Perkins in which the Mayor discussed his plan for annexation of all areas within a 7-mile margin of the current City of Selma. (Compl., ¶7).

7. This plan, according to Plaintiff, was not well received by the City Council when presented in the summer of 2002.

8. Plaintiff further alleges that Mayor Perkins instructed an employee in the City's finance department, Susie Jones, to change entries in the accounting records. These changes apparently generated errors in the end of the month reports and Plaintiff could no longer attest that the financial records were reliable.

9. Plaintiff states that these accounting errors were discovered on or about September 3, 2002 and that he notified the City's auditing firm on the same day. He further claims that he was criticized for this action.

10. Defendants assert that during the months of September and October, 2002 detailed information and figures concerning the City of Selma's financial status were misreported. Specifically, it was reported that the City had a $429,000 deficit, when the City actually had a budget surplus of $127,000.

11. Defendants further contend that Plaintiff wrote a letter, which appeared in an article in the Selma Times-Journal, admitting responsibility for the deficit/surplus misstatements.

12. In contrast, Plaintiff alleges that the misreporting of the deficit/surplus was a direct result of the City Treasurer supplying incorrect figures to him. He claims that this was either the error of the Treasurer or at the request of Mayor Perkins.

13. He further states that he was given the faulty information purposefully after he expressed his concern regarding the City's altered financial reports and annexation plans.

14. Plaintiff claims the City Council never met with him to discuss these misreported figures. Defendants, however, assert that there was a meeting. (Defs.' Mot. Summ. J., Doc. 15, p. 4).

15. The City Council placed Plaintiff on "administrative leave" with pay on or about October 1 or 2, 2002. (Defs.' Exs. 11 &12, Doc. 15-6).

16. Plaintiff asserts that he was barred from meeting with the City Council at all after October 1, 2002. Rather, that all discussion of his position after this date was held privately between the City Council and Mayor Perkins in executive session, and that he an his attorney were specifically excluded.

17. Defendants claim that Plaintiff tendered a verbal resignation to the City Council and they accepted it via a resolution dated October 28, 2002. (Defs. Mot. Summ. J. at 4; Defs.' Ex. 12).

18. Plaintiff denies ever tendering his resignation, either verbally or in writing. Rather, he contends that he was simply sent home from work on October 1, 2002.

19. City Director of Personnel, Valeria Jones, informed Plaintiff, via letter, that the City Council accepted his letter of resignation. (Defs.' Ex. 13, Doc. 15-6).

20. On November 14, 2002, Plaintiff's attorney sent a letter to the President of the City Council, George Evans, stating that his understanding was that the Plaintiff had not, in fact, tendered

      his resignation.  (Defs.' Ex. 14, Doc. 15-6).

21. Therefore, unsure as to whether Plaintiff had actually resigned or withdrawn his resignation, the City Council met on November 25, 2002 and voted not to reappoint Plaintiff to the position of Finance Director, effective December, 2002.

22. At this time, the City Council did not have any knowledge of Plaintiff's opposition to Mayor Perkins's annexation plans.

23. Two members of the City Council, Glenn Sexton and Rita Sims Franklin, have both sworn that the City Council was not informed of the problems between Plaintiff and Mayor Perkins relating to annexation plans or the reportable condition dealing with the accounting records of the City of Selma.

24. They further swear that the City Council's decision not to reappoint Plaintiff had nothing to do with his job performance.

25. Plaintiff has filed this lawsuit against the City of Selma and Mayor Perkins, alleging that his "termination" from the position of Finance Director in December, 2002 was in retaliation for exercising his First Amendment rights related to an annexation plan of Defendant Mayor Perkins, of which the Plaintiff had knowledge, and the Plaintiff's alleged discovery of accounting violations within the City.

**LEGAL ANALYSIS**

*Summary Judgment Standard*

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

An issue of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Hickson Corp. v. N. Crossarm Co., Inc.,* 357 F.3d 1256, 1259 (11th Cir. 2004) (citing *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.* A court must decide ""whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*

The moving party bears "the initial responsibility of informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof at trial, the moving party may discharge its "initial responsibility" by showing that there is an absence of evidence to support the nonmoving party's case or by showing that the nonmoving party will be unable to prove its case at trial. *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437-38 (11th Cir. 1991). To survive summary judgment, the nonmoving party bearing the ultimate burden of proof at trial must then come forward with evidence sufficient to withstand a directed verdict motion. *Fitzpatrick v. Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993).

On summary judgment, "the district court should resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences ... in his favor." *Four Parcels*, 941 F.2d at 1428 (internal quotations and citations omitted).

*Plaintiff's Claim*

Plaintiff brings this lawsuit against Defendants[2] on the sole claim of violation of his rights under 42 U.S.C. §1983.  Plaintiff alleges that his First Amendment right to freedom of speech and expression was infringed upon by the Defendants' action of "terminating" him in retaliation for his protected speech regarding Mayor Perkins's annexation plan and the City's accounting violations.

***Violation of Plaintiff's First Amendment Rights to Freedom of Speech and Expression Under §42 U.S.C. §1983***.

Based upon the City of Selma's ordinance, Plaintiff was appointed by the City Council on a month-to-month basis.  Therefore, the City Council could choose not to reappoint him at any monthly interval during his tenure.  Though the City Council could elect not to reappoint him for any reason, or no reason at all, they could not do so for an unconstitutional reason. *Morris v. Crow*, 142 F.3d 1379, 1381 (11th Cir. 1998); *See Connick v. Myers*, 461 U.S. 138, 142 (1983).  In the instant case, Plaintiff alleges that he was not reappointed because Defendant Mayor Perkins was retaliating against him for exercising his freedom of speech.  While it is well established that a public employee may not be retaliated against for practicing this Constitutional right, that right is not absolute. *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1157 (11th Cir. 2002).  Rather, the Courts have established a four-prong analysis for examining cases involving a public employee's exercise of First Amendment rights. *Id*.

---

[2] Plaintiff brings this suit against Mayor Perkins in his individual capacity, as well as the City of Selma based upon Mayor Perkins's actions in his official capacity.  When a municipal officer is sued in their official capacity under §1983, such a suit is, in actuality, a suit directly against the city that the officer represents. *Blyther v. City of Mobile*, 2005 WL 3019756 (S.D. Ala. 2005)(citing *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991)).  Because suits against municipal officers sued in their official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official capacity suits against local government officials. *Id*.

Before making this analysis, however, the Court must first address whether, based on the alleged actions, Defendants are even subject to liability under §1983.

### Mayor Perkins's status as a "Decisionmaker"

In their Motion for Summary Judgment, Defendants contest that Mayor Perkins cannot be held individually liable for Plaintiff not being reappointed because he was not the "decisionmaker" as to whether Plaintiff remained Financial Director. Rather, Defendants assert, this decision was made solely by the City Council.

In order to hold a government official individually liable under a §1983 claim, it must be demonstrated that they were the official "decisionmaker" in regards to the aggrieved action. *See Kamensky v. Hillsborough County*, 148 Fed.Appx. 878 (11th Cir. 2005); *See also Quinn v. Monroe County*, 330 F.3d 1320, 1326 (11th Cir. 2003). In the case of municipal officials, identifying the official or formal decisionmaker may be done by examining the statutory authority of the official alleged to have made the decision. *Quinn*, 330 F.3d at 1328. "In the termination context, a "decisionmaker" has the power to terminate an employee, not merely the power to recommend termination." *Kamensky*, 148 Fed.Appx. 878 (citing *Quinn*, 330 F.3d at 1328).

The position of Financial Director was created by the City Council pursuant to their authority under *Ala. Code* §11-43-46. Once Plaintiff became a City Council-appointed official, Alabama statute specifically provides that he may only be removed by the City Council. *Ala. Code* §§ 11-43-81, 11-43-160. Though Mayor Perkins had the power to recommend that the City Council not reappoint Plainitiff, he did not have a vote on the City Council. Seemingly, the ultimate decision as to Plaintiff's reappointment as Financial Director belongs to the City Council.

In spite of Defendants' arguments and evidence demonstrating that the City Council was the entity responsible for the decision not to reappoint, Plaintiff has proffered no rebuttal other than the

affidavits of Rita Sims Franklin and Glenn Sexton.  Neither of these affidavits present any evidence that Mayor Perkins, rather than the City Council, was the official "decisionmaker" regarding Plaintiff's reappointment.  Furthermore, even if Plaintiff could show that the City Council's action to not reappoint him was essentially a "rubber stamp" of Mayor Perkins's recommendation, the Eleventh Circuit has recently refrained from extending the "rubber stamp" exception to cases asserting individual liability.  *Kamensky*, 148 Fed.Appx. 878.  Therefore, because Mayor Perkins was not the final "decisionmaker" with respect to whether Plaintiff would be reappointed as Financial Director, the Court finds that he cannot be held individually liable for Plaintiff's claim.

### City of Selma's Liability for Mayor Perkins's Actions

The Eleventh Circuit has noted there is a difference between a "decisionmaker," who may be held individually liable, and a "final policymaker," "whose actions may cause the government entity to be held liable for a custom or policy."  *Id*. (citing *Quinn*, 330 F.3d at 1326).  Under §1983, municipalities may not be held liable under *respondeat superior*.  *Quinn*, 330 F.3d at 1325.  Rather, municipal liability may only be triggered when there is an execution of government policy or custom.  *Id*.  In order for the actions of a government official to impute liability on a municipality, it must be shown that he "possesses *final authority* to establish *municipal policy* with respect to the action ordered."  *Id*. (emphasis in original) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)).  The Eleventh Circuit further clarifies, "[a] government employee is considered a 'final policymaker' for governmental liability purposes only if his decisions have legal effect without further action by the governing body, and if the governing body lacks the power to reverse the ... employee's decision."  *Kamensky*, 148 Fed.Appx. 878 (citing *Holloman ex. rel. Holloman v. Harland*, 370 F.3d 1252, 1292 (11th Cir. 2004)).  "To determine if someone is a final policymaker, we look not only to 'state and local positive law,' but also to 'custom and usage having the force of

law.'" *Id*.

In the instant case, in regards to the action of not reappointing Plaintiff as Financial Director, it is clear that Mayor Perkins did not have "final policymaking" authority. As we have already discussed, even if Mayor Perkins made a recommendation to the City Council as to Plaintiff's reappointment that was supported by unconstitutional motives, the City Council was still the entity that ultimately decided not to renew Plaintiff's employment. Without further action by the City Council, any recommendation by Mayor Perkins regarding Plaintiff's reappointment did not have legal effect. Therefore, without "final policymaker" status, we cannot find that Mayor Perkins's actions regarding the reappointment impute liability on the City of Selma.

The Eleventh Circuit has recognized the proposition that a municipality may be liable for the improper motives of a employee, who is not a final policymaker, if the final policymaker simply "rubber stamps" that employee's recommendation. *Kamensky*, 148 Fed.Appx. 878; *Quinn*, 330 F.3d at 1327. However, here, as in other Eleventh Circuit cases involving this issue, Plaintiff has not pointed to any cognizable defect in the proceedings or provided any evidence that the City Council approved the alleged improper motive. *See Id*. In fact, Plaintiff has submitted affidavits from two Council members specifically stating that neither even knew of the Plaintiff's interactions with the Mayor Perkins regarding the annexation or reporting of accounting errors. Without any evidence indicating that the City Council's decision to not reappoint was either based on an improper motive or that they simply "rubber stamped" Mayor Perkins's recommendation, the Court cannot find the City of Selma liable under §1983.

**CONCLUSION**

As presented to this Court, Plaintiff's sparse pleadings fail to support his claims that the complained of actions render the named defendants liable under §1983. Because Plaintiff cannot

jump the initial hurdle of demonstrating that Mayor Perkins had the requisite power as a "decisionmaker" or "policymaker" regarding the City Council's decision not to reappoint him as Financial Director, the Court declines to address any further issues regarding Plaintiff's claims. Therefore, based on the above analysis, the Court finds that Defendants' Motion (Doc. 15) for Summary Judgment is **due to be and hereby GRANTED**.

    **So ORDERED**, this 13th day of December, 2005.

**Clerk is ORDERED to CLOSE this case.**

                                                         s/ W. B. Hand
                                            SENIOR DISTRICT JUDGE